1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                  FOR THE DISTRICT OF OREGON

11   DAVE O. KALLIO,                   )
                                       )
12                  Plaintiff,         )
                                       )    No.  CV-07-1211-HU
13        v.                           )
                                       )
14   COLUMBIA COUNTY DEPARTMENT OF )
     ROADS, a local government,        )    OPINION & ORDER
15                                     )
                    Defendant.         )
16   ─────────────────────────────────)

17   Matthew C. Lackey
     MATTHEW C. LACKEY, ATTORNEY AT LAW, P.C.
18   1020 S.W. Taylor Street, Suite 888
     Portland, Oregon 97205
19
20        Attorney for Plaintiff

21   Karen O'Kasey
     Sean M. Bannon
22   HOFFMAN, HART & WAGNER, LLP
     Twentieth Floor
     1000 S.W. Broadway
23   Portland, Oregon 97205

24        Attorneys for Defendant

25   HUBEL, Magistrate Judge:

26        Plaintiff Dave Kallio brings this employment-related action

27   against his former employer, defendant Columbia County Department

28   of Roads.  Defendant moves for summary judgment against plaintiff's

1 - OPINION & ORDER

1  common-law wrongful discharge claim, and against the constructive

2  discharge portion of plaintiff's statutory disability

3  discrimination claims.  Defendant also moves to strike two exhibits

4  submitted by plaintiff in opposition to defendant's summary

5  judgment motion.

6      Both parties have consented to entry of final judgment by a

7  Magistrate Judge in accordance with Federal Rule of Civil Procedure

8  73 and 28 U.S.C. § 636(c).  For the reasons explained below, I

9  grant the summary judgment motion.  I deny the motion to strike as

10 moot.

11                          BACKGROUND

12     Plaintiff was employed by defendant as a road maintenance

13 worker, beginning in August or September 1997.  Before applying for

14 the position, plaintiff had the opportunity to review the job

15 description.  At the time plaintiff took the job, he believed he

16 could perform all of the essential duties and responsibilities of

17 the position.   He did not believe he needed any type of

18 accommodation to perform his job duties.

19     In his declaration, plaintiff states that he provided

20 defendant with a letter from the Veteran's Administration (VA),

21 stating that he was forty-percent disabled for a service-related

22 disability.  Pltf's Declr. at ¶ 4.  He further states that this was

23 reviewed with him during the interview process.  Id.  He cites to

24 Exhibit 1 to his Declaration which is an April 23, 1997 letter from

25 the VA to plaintiff informing him that he had a service-connected

26 disability rating of forty-percent.  Exh. 1 to Pltf's Declr.  The

27 April 23, 1997 letter from the VA contains no information about the

28 type of disability or any limitations plaintiff may have as a

2 - OPINION & ORDER

1  result of the disability.  <u>Id.</u>  In deposition, plaintiff stated

2  that he did not mention that he had Gulf War Syndrome, but

3  mentioned only that he had the VA rating.  Pltf's Depo. at p. 79.

4        At the time plaintiff was hired, he worked four ten-hour

5  shifts.  He knew when he was hired that the job required four ten-

6  hour shifts in the summer and early fall.  Plaintiff's job duties

7  involved patching roads, road grading, sanding, plowing snow, and

8  cutting brush.  Although plaintiff admitted in deposition that he

9  had no trouble performing these duties, he states in his

10 declaration that as a result of suffering from Gulf War Syndrome,

11 he became very fatigued after working more than eight hours.

12 Pltf's Declr. at ¶ 5.  He also submits two letters written by a co-

13 worker to the VA, in 2005, relating concerns about his health and

14 at least in the first of the two letters, particularly mentioning

15 his fatigue and the four ten-hour shifts he works in the summer

16 months.  Exh. 3 to Pltf's Declr.[1]

17        Plaintiff's supervisor for the first nine months was Donny

18 Titus.  Plaintiff states in his deposition that he mentioned

19 several times to Titus that he could not tolerate the four ten-hour

20 shifts.  Pltf's Depo. at p. 48.  Plaintiff's supervisor changed to

21 Mike Johnstun after about nine months, when plaintiff transferred

22 to the Clatskanie shop from the Vernonia shop.  <u>Id.</u> at p. 60.

23 Plaintiff also complained to Johnstun that he had problems with the

24 four ten-hour shifts.  <u>Id.</u> at p. 68.

25

26       [1] Defendant separately moves to strikes these two exhibits
27 because they are hearsay.  I deny the motion as moot because even
   without striking the exhibits, I grant defendant's summary
28 judgment motion.

3 - OPINION & ORDER

Plaintiff told Johnstun that the long hours were getting hard and he wished they could go back to the five eight-hour shifts permanently. Id. While plaintiff told Johnstun he had Gulf War Syndrome and the long hours made it hard to maintain the job, plaintiff admits that he never made a direct request to Johnstun for accommodation. Id. at pp. 68-69.

Ryan Allen was plaintiff's work crew leader, presumably sometime after Johnstun, although the record is a bit unclear in that regard. Plaintiff raised the schedule change issue with Allen. Allen suggested that plaintiff write a letter to Dave Hill, the County's Director of Public Works and Parks. Allen Depo. at p. 21.

On December 8, 2003, plaintiff wrote a letter to "Dave," requesting that the County stay with a five, eight-hour shift schedule the following year. Exh. 2 to Pltf's Declr. In the letter, plaintiff explained that he has Gulf War Syndrome and that while there are a variety of symptoms, the worst is fatigue. Id. He stated that he gets very tired in the afternoons and feels that his production may start to fall off as well. Id. He then offered how it would be beneficial to the County to have plaintiff work a non-overtime day and noted that allowing him to stay on a five, eight-hour day schedule would provide the County with someone at work on Fridays in case of a call from the office or "C-COM," the County's 911 agency. Id.

Plaintiff states that Hill ignored this request. Pltf's Declr. at ¶ 6. In his deposition, plaintiff acknowledged that he did not recall following up with Hill and asking Hill about the letter or if Hill had had a chance to consider plaintiff's request.

4 - OPINION & ORDER

1  Pltf's Depo. at p 84.  Hill states that he did not consider the
2  letter a request for accommodation for a disability, but rather
3  thought plaintiff desired to reduce fatigue for himself and to save
4  the County money.  Hill Depo. at pp. 23-24, 27, 41, 42.  Hill
5  states that he discussed the request with Allen and asked Allen to
6  let plaintiff know that the request would not work.  Id. at p. 28.

7      Plaintiff also states in his declaration that from December
8  2003 onward, he made requests for accommodation to Allen and Human
9  Resources Director Jean Ripa.  Id. at ¶ 8.  He contends that his
10  requests were left unanswered.  Id.

11      Allen states that plaintiff raised the scheduling issue with
12  him several times in 2004 and 2005.  Allen Depo. at pp. 28-29.
13  Allen referred plaintiff to Hill.  Id. at pp. 27-28.  Hill states
14  he heard nothing more from plaintiff about his scheduling request,
15  until after plaintiff left employment with the County.  Hill Depo.
16  at p. 28; see also Pltf's Depo. at pp. 83-84 (no recollection of
17  returning to Hill about request).

18      In his deposition, plaintiff admits that he went to see Ripa,
19  but it was "after a lot of time had passed" from when he gave Hill
20  the letter.  Pltf's Depo. at p. 84.  Later, he indicates that the
21  meeting with Ripa was in May 2005.  Id. at p. 104.

22      In his deposition, plaintiff states that throughout 2003 and
23  2004, he worked four ten-hour shifts, but he was always allowed to
24  go home or call in sick if he was fatigued.  Pltf's Depo. at pp.
25  92-93.  In his declaration, he states that during the summer of
26  2004 and 2005, he worked "four, eight hour days" without
27  accommodation which caused a great amount of fatigue and a
28

5 - OPINION & ORDER

1  worsening of his condition.  Pltf's Declr. at ¶ 7.[2]

2      Plaintiff met with Ripa in approximately May 2005 and

3  discussed his accommodation request to work five eights instead of

4  four tens.  Pltf's Depo. at p. 104-05.  Ripa's notes from that

5  meeting reveal that plaintiff brought up many issues at the time,

6  only one of which was the schedule request.  Exh. 4 to Lackey Sur-

7  Reply.  In his deposition, plaintiff stated that he wanted to ask

8  Ripa if she had heard anything about his accommodation request

9  (made in the December 2003 letter to Hill).  Id. at p. 105.  In his

10  declaration, he states that Ripa told him that the ADA issue would

11  be looked at carefully, but he never heard from her again.  Pltf's

12  Declr. at ¶ 9; see also Exh. 4 to Lackey Sur-Reply Declr. (Ripa's

13  notes from meeting indicating that she told plaintiff ADA issue

14  would be looked at).

15      In his deposition, plaintiff states that Ripa suggested that

16  she, Hill, and the union president meet to try to work something

17  out.  Pltf's Depo. at p. 105.  Ripa's notes indicate that the

18  meeting was to address several of plaintiff's work complaints,

19  particularly his feeling that Hill disliked him, showed favoritism

20  to other workers, and the lack of advancement opportunities.  Exh.

21  4 to Lackey Sur-Reply Declr.

22      In her deposition, Ripa testified that when she met with

23  plaintiff in May 2005, he mentioned that he had sent a letter to

24  Hill requesting a schedule accommodation.  Ripa Depo. at p. 23.

25  She does not recall what plaintiff said about needing the schedule

26

27      [2]  Plaintiff's counsel confirmed at oral argument that the
   reference to four, eight-hour days should have been to four, ten-
28  hour days.

6 - OPINION & ORDER

accommodation. <u>Id.</u> She understood that he had made a similar request a couple of years ago. <u>Id.</u> She states that she told plaintiff that if he was renewing the request, he needed to provide some medical clarification or information to document his diagnosis and need for accommodation of some type. <u>Id.</u> at pp. 23-24. She later testified that she left the ball in plaintiff's court and since he never followed up with providing information, she did not follow up any further. <u>Id.</u> at p. 32. Plaintiff testified that he did not recall Ripa asking for medical documents, but that "[s]he may have." Pltf's Depo. at p. 123.[3] He also testified that at some point during his employment, his physician offered to write a letter to "get [plaintiff] off those long hours[,]" but plaintiff declined to have the physician write the letter. <u>Id.</u> at p. 124.

Ripa also states that she participated in a meeting with plaintiff and his union representative in June 2005, but that neither plaintiff, nor the union representative, raised the issue of ADA accommodation at the meeting. <u>Id.</u> at pp. 24-25.

On December 8, 2005, plaintiff resigned from his employment with the County. He accepted a position as a landscaper with the Clatskanie School District.

In his deposition, plaintiff explained that he applied for the landscaper job with the school district because he "felt that there

---

[3] I reject plaintiff's contention that plaintiff's deposition testimony regarding his inability to recall whether Ripa had asked for medical documentation of his disability and his need for accommodation creates a material issue of fact as to whether Ripa did indeed ask for such documentation. Ripa's testimony is unequivocal. Plaintiff's testimony does not contradict Ripa's testimony and does not create an issue of fact.

1   wasn't much chance of getting to stay on five eights in the
2   summer." Pltf's Depo. at p. 150. He stated that his disability
3   was getting worse, he was getting "tireder" in the afternoons, and
4   after "repeated attempts to reconcile the situation," he started
5   looking for a job with fewer hours. Id.

6       Plaintiff talked to Hill about his resignation. Hill told
7   plaintiff it would be acceptable for plaintiff to leave early
8   without giving two weeks advance notice. Plaintiff then went to
9   work for Clatskanie School District for nine months. He left after
10  he received a 100% disability award from the VA which plaintiff
11  believed precluded him from working.

12      At the time plaintiff resigned from the County, in December
13  2005, the work schedule was five, eight-hour shifts. Little
14  overtime was required. Plaintiff was concerned, however, that the
15  county would go back to four, ten-hour shifts and overtime in the
16  summer.

17      When plaintiff gave his letter of resignation to Hill, he said
18  nothing to indicate that he was resigning because plaintiff's
19  request for accommodation was not granted. But, plaintiff "figured
20  [Hill] knew that well enough." Pltf's Depo. at p. 200.

21      No one at the County ever asked plaintiff to resign and no one
22  ever told plaintiff that his job was on the line. One county
23  employee, Kelley Lundburg, once told plaintiff he should find
24  another line of work. Id. at p. 202. The context of the comment
25  was that plaintiff had expressed unhappiness to Lundburg about
26  having been "written up," and Lundburg stated, during a coffee
27  break, while they were "chewing the fat in general," that maybe
28  plaintiff should find another line of work. Id. at p. 203. During

8 - OPINION & ORDER

1    the deposition, plaintiff stated that Lundburg seemed to be joking

2    and laughing when he made the comment.  Id.  Also at deposition,

3    plaintiff stated that other than that comment, he had no evidence

4    that anybody at the County wanted him to be gone.  Id.

5                                STANDARDS

6        Summary judgment is appropriate if there is no genuine issue

7    of material fact and the moving party is entitled to judgment as a

8    matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

9    initial responsibility of informing the court of the basis of its

10   motion, and identifying those portions of "'pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with

12   the affidavits, if any,' which it believes demonstrate the absence

13   of a genuine issue of material fact."  Celotex Corp. v. Catrett,

14   477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

15       "If the moving party meets its initial burden of showing 'the

16   absence of a material and triable issue of fact,' 'the burden then

17   moves to the opposing party, who must present significant probative

18   evidence tending to support its claim or defense.'"  Intel Corp. v.

19   Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

20   (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

21   Cir. 1987)).  The nonmoving party must go beyond the pleadings and

22   designate facts showing an issue for trial.  Celotex, 477 U.S. at

23   322-23.

24       The substantive law governing a claim determines whether a

25   fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors

26   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

27   to the existence of a genuine issue of fact must be resolved

28   against the moving party.  Matsushita Elec. Indus. Co. v. Zenith

9 - OPINION & ORDER

1  Radio, 475 U.S. 574, 587 (1986).  The court should view inferences

2  drawn from the facts in the light most favorable to the nonmoving

3  party.  T.W. Elec. Serv., 809 F.2d at 630-31.

4      If the factual context makes the nonmoving party's claim as to

5  the existence of a material issue of fact implausible, that party

6  must come forward with more persuasive evidence to support his

7  claim than would otherwise be necessary.  Id.; In re Agricultural

8  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

9  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

10  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

11                          DISCUSSION

12      In his Complaint, plaintiff brings three claims for relief.

13  In the first, he contends that defendant violated the Americans

14  with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA") by (1)

15  failing to engage in an interactive process for identifying and

16  implementing his request for a reasonable accommodation; (2)

17  failing to reasonably accommodate his disability, including, but

18  not limited to, failing to grant his request for a modified work

19  schedule; and (3) taking adverse employment actions against him,

20  including, but not limited to, constructively discharging him from

21  his employment because of his disability.  Compl. at ¶¶ 21-23.

22      In his second claim, he contends that defendant violated

23  Oregon Revised Statutes § (O.R.S.) 659A.100 - 659A.145, Oregon's

24  Disability Discrimination Law, in the same manner as the ADA claim.

25  Id. at ¶¶ 24-26.

26      In his third claim, he contends that defendant wrongfully,

27  constructively discharged him by "intentionally denying his request

28  for a modified work schedule because Defendant knew that Plaintiff

10 - OPINION & ORDER

1  would quit, or was substantially certain that Plaintiff would quit,
2  because Plaintiff had a disability that made working ten or more
3  hours per day an intolerable working situation." Compl. at ¶ 28.

4      In this motion for partial summary judgment, defendant moves
5  for summary judgment on the third claim (common law wrongful,
6  constructive discharge), and against those portions of the first
7  and second claims for relief alleging constructive discharge as the
8  adverse employment action.

9      At oral argument on the motion, plaintiff's counsel expressly
10 stated that plaintiff was not asserting a constructive discharge
11 component to his adverse employment action statutory claims.
12 Relying on that statement, I could simply grant defendant's motion
13 as to that part of each of the statutory claims.

14     Nonetheless, because the Complaint indicates that plaintiff
15 does indeed base his statutory claims in part on an adverse
16 employment action theory consisting of an alleged constructive
17 discharge, and there has been no motion to amend or dismiss those
18 claims, and because the briefing on the summary judgment motion
19 from both parties comprehensively discusses an alleged constructive
20 discharge claim as part of the statutory claims, I address them
21 here.

22 I.  Preclusion of Common Law Wrongful Discharge Claim

23     Defendant moves for summary judgment on the wrongful discharge
24 claim because the statutory claims provide an adequate remedy,
25 precluding the ability to bring a common law wrongful discharge
26 claim.  As Judge Stewart explained in a 1998 Opinion, wrongful
27 discharge is designed to "serve as a narrow exception to the at-
28 will employment doctrine in certain limited circumstances where the

11 - OPINION & ORDER

courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." Draper v. Astoria Sch. Dist. No. IC, 995 F. Supp. 1122, 1127 (D. Or. 1998), abrogated in part on other grounds, Rabkin v. Oregon Health Sci. Univ., 350 F.3d 967 (9th Cir. 2003). The tort "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available." Id. at 1128.

Thus, generally, under Oregon law, a common law wrongful discharge claim will be precluded by a statutory claim providing an adequate remedy. E.g., Walsh v. Consolidated Freightways, Inc., 278 Or. 347, 351-52, 563 P.2d 1205, 1208-09 (1977) (presence of adequate federal statute redressing termination for reporting unsafe working conditions precluded wrongful discharge claim); Anderson v. Evergreen Int'l Airlines, Inc., 131 Or. App. 726, 734, 886 P.2d 1068, 1072 (1994) ("availability of an adequate statutory remedy precludes an otherwise sufficient common law wrongful discharge claim.").

Plaintiff does not appear to contest that the remedies provided under Oregon's statutory disability discrimination laws include economic, noneconomic, and punitive damages, as well as attorney's fees. O.R.S. 659A.885 (providing for injunctive relief, other appropriate equitable relief, back pay, costs and attorney's fees, compensatory damages, punitive damages, and a jury trial in actions alleging a violation of O.R.S. 659A.100 to 659A.145).

Other judges in this Court have concluded that the remedies provided under the state statute are adequate and thus preclude a

12 - OPINION & ORDER

1  common law wrongful discharge claim based on the same conduct.

2  E.g., Bellingham v. Harry & David Ops. Corp., No. CV-07-3033-PA,

3  2008 WL 339411, at *5 (D. Or. Feb. 5, 2008) (Judge Panner granting

4  summary judgment to defendant on plaintiff's wrongful discharge

5  claim because Oregon disability statutes provided an adequate

6  statutory remedy); Bailey v. Reynolds Metals Co., No. CV-99-1418-

7  HA, 2000 WL 33201900, at *2 (D. Or. Sept. 11, 2000) (Judge Haggerty

8  concluding that Oregon's disability statues preempted a claim for

9  wrongful discharge because the remedies provided by the legislature

10 are adequate); Robinson v. U.S. Bancorp, No. CV-99-2723-ST, 2000 WL

11 435468 (D. Or. Apr. 20, 2000) (Judge Stewart concluding that the

12 availability of an action under former O.R.S. 659.436 (now

13 659A.112) preempts a wrongful discharge claim);    Underhill v.

14 Willamina Lumber Co., No. CV-98-630-AS, 1999 WL 421596 (D. Or. May

15 20, 1999) (Judge Ashmanskas concluding that former O.R.S. 659.425

16 (a statute providing a cause of action for discrimination on the

17 basis of disability by employment agencies) preempts a wrongful

18 discharge claim).

19      I reach the same conclusion here.   Moreover, whether or not

20 plaintiff actually brings a statutory claim based on the adverse

21 employment action of a constructive discharge, is irrelevant.   It

22 is the availability of the adequate statutory remedy in the law

23 that precludes the common law wrongful discharge claim based on the

24 same conduct, not whether plaintiff actually brings a claim under

25 the statute.   See Walsh, 278 Or. at 351-52, 563 P.2d at 1208-09

26 (although plaintiff did not bring a claim under relevant statute,

27 his common-law wrongful discharge claim was nonetheless precluded

28 because the existing statutory law provided a remedy for an

1  employee who is discharged for complaining of a safety violation).

2

3      I grant summary judgment to defendant on the common-law
4  wrongful discharge claim.

5  II.  Constructive Discharge Component of Statutory Claims

6      As noted above, if plaintiff does not assert a constructive
7  discharge as a basis for the adverse employment action prong of his
8  statutory claims, defendant's motion as to that prong of the
9  statutory claims is granted without further need for discussion.

10     To the extent plaintiff does assert such a claim, however, I
11 conclude that no reasonable juror would find a constructive
12 discharge based on the facts in the record, and thus, I grant
13 defendant's motion.

14     A.  Legal Standards

15     Under Oregon law, a discharge is "constructive" if a
16 resignation is forced by unacceptable working conditions.  Bratcher
17 v. Sky Chefs, Inc., 308 Or. 501, 503-04, 783 P.2d 4, 5 (1989).
18 More specifically, to prove constructive discharge, a plaintiff
19 must show that (1) the employer intentionally created working
20 conditions that (2) were so intolerable that a reasonable person
21 would have resigned; and (3) the employer created these conditions
22 because it wanted the employee to resign; and (4) the employee left
23 because of those conditions.  McGanty v. Staudenraus, 321 Or. 532,
24 557, 901 P.2d 841, 856-57 (1995).  The test is an objective one,
25 not a subjective one.  Id.

26     In order to prove constructive discharge under federal law,
27 plaintiff must show that the working conditions were so intolerable
28 that a reasonable person in the employee's position would have felt

14 - OPINION & ORDER

1  compelled to resign.  Poland v. Chertoff, 494 F.3d 1174, 1184 (9th

2  Cir. 2007).   The constructive discharge occurs when the working

3  conditions deteriorate as a result of discrimination to the point

4  that  they  become  sufficiently  extraordinary  and  egregious  to

5  overcome  the  normal  motivation  of  a  competent,  diligent,  and

6  reasonable employee to remain on the job to earn a livelihood and

7  to serve his or her employer.   Id.

8        B.  Discussion

9        Defendant  notes  that  at  the  time  plaintiff  voluntarily

10  resigned, he was working five, eight-hour shifts which caused him

11  no difficulty.   Plaintiff acknowledged that if he needed to leave

12  early or was tired while working a four, ten-hour shift week, he

13  was allowed to do so.   He admitted that he was never threatened

14  with termination or told he was going to be fired.   He failed to

15  follow-up directly with Hill after giving Hill the letter in 2003

16  and after Allen told him to talk with Hill, and he waited until

17  spring of 2005 to meet with Ripa, about a host of issues, not just

18  the schedule.   Even after meeting with Ripa, he failed to provide

19  her with the requested medical documentation and worked another

20  season of the four, ten-hour shift schedule, before resigning.

21        Plaintiff  contends  that  it  is  not  the  four,  ten-hour  shifts

22  that were intolerable, but defendant's failure to engage in the

23  interactive process and the failure to accommodate his disability

24  that  created  the  intolerable  conditions.     He  argues  that  a

25  reasonable jury could conclude that defendant repeatedly ignored

26  plaintiff's accommodation requests and could conclude that this was

27  intentional, evidencing defendant's intent to force plaintiff to

28  resign.  He suggests that the failure to engage in the interactive

15 - OPINION & ORDER

1  process and the failure to accommodate, with the resulting
2  worsening of his condition, amount to intolerable working
3  conditions for a person with his disability.

4      Plaintiff's argument is inconsistent with a statutory scheme
5  that recognizes distinct theories of violation.  That is, plaintiff
6  would have every failure to accommodate or failure to engage in the
7  interactive process, without more, support a claim for adverse
8  employment action as long as the employee resigned without
9  receiving an accommodation.  I see no support for this in either
10  statute.

11     I do not mean to suggest that a failure to engage in the
12  interactive process or the failure to accommodate can never be
13  relevant to a disability discrimination claim based on a theory of
14  adverse employment action.  But, it simply goes too far to conclude
15  that a failure to accommodate or failure to engage in the
16  interactive process is, by definition, and without more, an
17  intolerable working condition capable of supporting a constructive
18  discharge claim.

19     The facts of each case must be considered.  And, while the
20  merits of the failure to engage and failure to accommodate claims
21  are not at issue in the motion, it is relevant to note, in
22  assessing whether the working conditions were so intolerable as to
23  support a constructive discharge, that the interactive process
24  "requires participation by both parties[,]" Beck v. University of
25  Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996) (citing 29
26  C.F.R. Part 1630, App.), and that a reasonable accommodation is not
27  required when the employee fails to provide requested documentation
28  of his or her medical condition.  See Kratzer v. Rockwell Collins,

16 - OPINION & ORDER

1  <u>Inc.</u>, 398 F.3d 1040, 1045 (8th Cir. 2005) (affirming summary
2  judgment to employer on accommodation claim when the plaintiff
3  failed to provide requested updated physical evaluation); <u>Allen v.</u>
4  <u>Pacific Bell</u>, 348 F.3d 1113, 1115 (9th Cir. 2003) (absent
5  additional medical evidence from plaintiff regarding a change in
6  limitations, employer was under no duty to further engage in the
7  interactive process); <u>Templeton v. Neodata Servs., Inc.</u>, 162 F.3d
8  617, 619 (10th Cir. 1998) (employee's failure to provide medical
9  information precluded her from claiming that the employer failed to
10  provide reasonable accommodation); <u>see also</u> <u>EEOC Enforcement</u>
11  <u>Guidance on Reasonable Accommodation and Undue Hardship, No.</u>
12  <u>915.002</u> (noting that while failure by the employer to participate
13  in an informal dialogue after receiving accommodation request could
14  result in liability for failure to provide a reasonable
15  accommodation, if an individual's disability or need for reasonable
16  accommodation is not obvious, the individual's failure or refusal
17  to provide requested reasonable documentation regarding the
18  disability and functional limitations renders the individual
19  ineligible to receive reasonable accommodation) (available at
20  www.eeoc.gov/policy/docs/accommodation.html).

21      Furthermore, the facts on this record, even when coupled with
22  success on the failure to engage in the interactive process and
23  failure to accommodate claims, cannot support a conclusion that
24  defendant's actions in this case amount to intolerable working
25  conditions.

26                              CONCLUSION

27      Defendant's motion for summary judgment (#18) is granted,
28  resulting in the dismissal of plaintiff's common-law wrongful

17 - OPINION & ORDER

discharge claim and the portion of the plaintiff's statutory claims

asserting an adverse employment action based on constructive

discharge. Defendant's motion to strike (#33) is denied as moot.

IT IS SO ORDERED.

Dated this __13th__ day of <u>January</u>, 2009.

<u>/s/ Dennis James Hubel</u>
Dennis James Hubel
United States Magistrate Judge

18 - OPINION & ORDER